IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ACTUATE CORPORATION,<br><br>        Plaintiff,<br>   v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., d/b/a FIS GLOBAL, and DOES 1 through 10,<br><br>        Defendants.<br>_____/ | No. C 14-02274 RS<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

In 2007, the predecessor of Actuate Corporation ("Actuate") entered into a software licensing agreement with an affiliate of Fidelity National Information Service, Inc. ("FNIS"). Actuate brought this case against FNIS after uncovering alleged discrepancies in the resulting royalty payments. The complaint sets forth a claim for injunctive relief on the basis of direct and indirect copyright infringement. FNIS moves to dismiss, arguing that a licensee is not liable for infringement solely on the basis of unpaid royalties. In the alternative, FNIS asks the Court to stay the proceeding pending completion of mandatory arbitration pursuant to the licensing agreement. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument and

the hearing set for August 28, 2014, is vacated. For the reasons set forth below, defendant's motion to dismiss must be granted.

## II.  BACKGROUND[1]

Actuate develops and licenses customer communication management and enterprise software. It is the successor-in-interest to Xenos Group, Inc. ("Xenos"), the original licensor and copyright holder of the software in dispute, which is known and marketed as d2e Platform ("Software"). Prior to the acquisition of Xenos by Actuate, the former entered into a licensing agreement with Treev LLC ("Treev") to distribute specific components of the Software as one component of a bundle of products distributed by Treev to end-users. Pursuant to that agreement, Treev was obligated to pay Xenos for each copy of the Software licensed to end-users at a rate specified in an attachment to the agreement and to provide reports to Actuate on distribution and royalty payments.

In June 2013, Actuate informed Fidelity Information Services ("FIS"), which it describes as Treev's "successor-in-interest," of discrepancies in the royalty reports submitted by FIS. There appears to be some dispute not relevant to the instant motion as to the corporate structure linking Treev, FIS, and named defendant FNIS.[2] Actuate requested additional information, which led FIS to admit to "over-deployment of the Software by multiple end-users." Complaint, ¶ 16. In other words, it appears that FIS has distributed more copies of Actuate's software than it paid for. On that basis, Actuate alleges that FIS is currently using and distributing the Software outside the scope of its license and thereby willfully infringing Actuate's copyrights.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

---

[1] All facts are taken as true from the complaint and the licensing agreement referenced therein for purposes of this order.

[2] According to FNIS, it is not the successor-in-interest to Treev. Rather, "Treev is an affiliate of Fidelity Information Services, LLC, which is owned by Fidelity National Information Services, LLC, which is owned by FNIS. Fidelity Information Services, LLC signs agreements on behalf of itself and its affiliates, including Treev. FNIS is a holding company and does not provide any services or products and is, therefore, an improperly named defendant." MTD, p. 2 & n. 3 (record citations omitted).

R. Civ. P. 8(a)(2).  "Pleadings must be so construed so as to do justice."  Fed. R. Civ. P. 8(e).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This determination is context-specific and requires the court "to draw on its judicial experience and common sense."  *Id.* at 679.

In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

A.  Direct Infringement

Defendant first moves to dismiss the direct infringement claim on the basis that the complaint does not allege facts amounting to copyright infringement but, rather, a breach of the parties' contractual arrangement.  Although a case for copyright infringement may lie between two parties to a licensing agreement, the Ninth Circuit has explained that "the potential for infringement exists only where the licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) *opinion amended and superseded on denial of reh'g*, 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011).  In other words, "there must be a nexus between the condition and the licensor's exclusive rights of copyright."  *Id.*, at 941.  Without such a nexus, the proper remedy lies in contract not copyright infringement.  *Id.*

17 U.S.C. § 106 grants copyright owners the exclusive right to reproduce, distribute, perform, and display a copyrighted work, and to prepare derivative works based thereon.  Contractual terms in a license that limit the scope of a licensee's right to exercise any of these statutory rights "are referred to as 'conditions,' the breach of which constitutes copyright infringement.  All other license terms are referred to as 'covenants,' the breach of which is

actionable only under contract law." *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027, 1043 (D. Alaska 2013).

The parties disagree as to whether a numeric limitation in a licensing agreement may implicate statutory rights. The Ninth Circuit has offered the following example concerning numeric limitations to illustrate the difference between statutory and contractual claims:

> [C]onsider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a work does not violate any right protected by copyright law."

*MDY Indus*, 629 F.3d at 940 (quoting *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1316 (Fed. Cir. 2005).

Relying in part on this illustration, courts in this circuit have recognized claims for copyright infringement where the licensee created or distributed copies in excess of explicit numeric conditions within the licensing agreement while rejecting such claims where the gravamen of the complaint was a failure to remit sufficient royalties. For example, a recent District of Hawaii decision permitted a claim for copyright infringement where the licenses at issue contained numeric limits permitting the licensee the right to reproduce a particular copyrighted image in up to 40,000 copies of a textbook to be distributed in North America. *Pac. Stock, Inc. v. Pearson Educ., Inc.*, 927 F. Supp. 2d 991, 998 (D. Haw. 2013). As that court held, "if [the licensor] does establish use exceeding the limits in a license, that use would be evidence of copyright infringement. The limits in the license define the scope of the license; they are not simply covenants enforceable only through a breach of contract action." *Id.*; *see Alaska Stock*, 975 F. Supp. 2d at 1043 (same). In contrast, a decision from this district concluded that a claim for infringement would not lie where the license agreement limited each purchased license to a single user, but did not set forth a limit on the number of licenses to be granted. *Netbula, LLC v. Storage Tech. Corp.*, No. 06-07391, 2008 WL 228036, at *5 (N.D. Cal. Jan. 18, 2008).

**United States District Court**
For the Northern District of California

The licensing agreement at issue grants Treev limited rights to use, manufacture, and distribute the Software. For example, the agreement provides that Treev shall have the limited right "to use and operate the Licensed Software . . . [as] necessary for purposes of the reasonable exercise and enjoyment of the limited rights granted herein." Agreement, ¶ 2.1.1. The limited derivative works license is more specific, providing Treev with the right "to create derivative works based on the Licensed Software only by bundling the Licensed Software with [Treev] Product(s) for the purpose of creating Composite Product(s); no rights to modify the Licensed Software are granted herein." *Id.*, ¶ 2.1.2. The distribution license includes both form and geographic limitations, permitting Treev to "market, distribute and display" such composite products "only in Object Code form" and only within an (undefined) territory. *Id.*, ¶ 2.1.4.

The complaint does not assert any facts suggesting that Treev (or FIS or FNIS) exceeded any of these licensing conditions. Apart from a bare allegation that defendant has "violate[d] the exclusive rights of Actuate as the copyright holder . . . as set forth in 17 U.S.C. § 106," none of the factual allegations concerning defendant's own use, reproduction, or distribution of the Software implicate contractual conditions with a nexus to statutory rights. For example, Actuate alleges that defendant "admitted to over-deployment of the Software by multiple end-users," and otherwise suggests defendant has not paid sufficient royalties for its use and distribution of the Software. The Agreement does not, however, establish any numeric limits on defendant's right to install and distribute the Software, but merely requires defendant to pay for the licenses it requires according to a payment schedule attached to the Agreement.

Actuate avers that it does not yet know the full extent of defendant's breach of the Agreement because defendant "has sought to obscure the precise scope and magnitude of its over-deployment" of the Software. Complaint, ¶ 18. Even crediting that an averment of obfuscation could give rise to a reasonable inference that defendant has exceeded the scope of the license to a greater extent than has yet been revealed, the gravamen of Actuate's direct infringement claim is for unpaid use and distribution of the Software, which are not cognizable as copyright infringement. On that basis, defendant's motion to dismiss the direct infringement claim must be granted.

B. <u>Contributory and Vicarious Infringement</u>

Defendant next moves to dismiss the claim for indirect infringement, including both contributory and vicarious infringement. To state a claim for contributory infringement, Actuate must allege facts sufficient to show that defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). "[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005). Instead, Actuate must allege that defendant took "affirmative steps" to foster infringement. *Id.* To state a claim for vicarious infringement, Actuate must allege that defendant had "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10*, 494 F.3d at 802 (footnote omitted); *Luvdarts*, 710 F.3d at 1071.

Allegations that defendant was aware of or permitted "overdeployment" of the Software by end-users in violation of end-user licensing are not sufficient to state a claim for indirect infringement because such allegations sound in contract not copyright for the reasons set forth above. Nor are conclusory allegations reciting the elements of a claim for contributory infringement (*see* complaint, ¶ 27) or vicarious liability (*see id.*, ¶ 28) sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Actuate does assert one factual allegation that would suggest a cognizable claim of indirect infringement if substantiated. The complaint avers that "[defendant's] admissions to date indicate that it distributed the Software in excess of the scope of the [Agreement] . . . by failing to restrict use of the Software to specified hardware configuration and server environments." Complaint, ¶ 19. The Agreement does not, however, appear to set forth any conditions concerning hardware or server requirements. *Cf. Netbula*, 2008 WL 228036 at *5–6 (holding that an allegation that the licensee used the licensed software on unpermitted operating platforms gives rise to an infringement claim, but finding the plaintiff's evidence insufficient to prove such a claim). As currently pled, the complaint is not sufficient to state a claim for indirect infringement.

C. <u>Injunctive Relief</u>

Defendant next moves to dismiss Actuate's independent claim for injunctive relief. Actuate appears to concede, correctly, that injunctive relief is a form of remedy not a claim for relief. *See, e.g., Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009); *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1136 (N.D. Cal. 2009). On that basis, Actuate's claim for injunctive relief must be dismissed.

D. Motion to Stay

In the alternative to dismissal, defendant moves to compel arbitration and to stay the case pending completion of that process. As an initial matter, it appears from the briefing that Actuate has already made a demand for arbitration, seeking (1) specific performance under the contract to provide required reports; (2) an accounting for all revenue derived from the Software licensing so that Actuate can determine what royalties are due; and (3) the payment of all lost license fees and damages due. Jackson Decl., Exh. 7.

To the extent defendant might seek an order compelling Actuate to seek injunctive relief through arbitration, it is not entitled to such an order. The arbitration provision in the Agreement clearly exempts from arbitration suits for injunctive relief for copyright infringement. Agreement, ¶ 11.2.5. An arbitration provision that expressly excludes a particular claim is sufficient to exempt that cause of action from arbitration, as "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Comm. Workers of* America, 475 U.S. 643, 648 (1986). To the extent Actuate is able to amend its complaint to set forth a viable claim for injunctive relief predicated on copyright infringement, the arbitration agreement would not apply.

Nor is it necessary, at this juncture, to stay these proceedings pending completion of the arbitration process. Defendant's motion to stay is set forth in the alternative to its motion to dismiss. Because the complaint is otherwise subject to dismissal for the reasons set forth above, there is no basis to determine whether a hypothetical non-arbitrable claim for injunctive relief should be permitted to proceed while the parties engage in arbitration concerning other matters.

E. Attorney Fees

Finally, defendant moves to dismiss Actuate's request for attorney fees, arguing the Agreement permits suit only for injunctive relief and to enforce an arbitration decision and not for damages or any other type of relief, including attorney fees. Agreement, ¶ 11.2.5. 17 U.S.C. § 505, however, provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party [and] may also award a reasonable attorney's fee to the prevailing party as a part of the costs." The parties' have not adequately briefed the question of whether the arbitration clause of the agreement has displaced the statutory provision for attorney fees. Defendant's motion to dismiss the request for attorney fees is therefore denied, though the complaint is subject to dismissal in its entirety for failure to state a plausible claim for relief. This Order is without prejudice to defendant renewing its motion to dismiss any request for attorney fees in the event plaintiff elects to file an amended complaint.

## V.  CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted, with leave to amend. Any amendment must be filed within 30 days of this order or the case will be dismissed without further notice.

IT IS SO ORDERED.

Dated: August 21, 2014

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE